UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:                                                    Chapter 7

JESSE MORTON HILSEN a/k/a                                  Case No. 05-30850-ess
JESSE HILSEN GRUNENBAUM a/k/a
JOSEPH GRUNENBAUM a/k/a
JESS GRUNEN,

                         Debtor.
----------------------------------------------------------------x

RICHARD O'CONNELL, as Chapter 7 Trustee
of Jesse Morton Hilsen a/k/a Jesse Hilsen
Grunenbaum a/k/a Joseph Grunenbaum a/k/a
Jess Grunen,

                         Plaintiff,                       Adv. Pro. No. 06-1249-ess

           -against-

JOAN PACKLES a/k/a JOAN MARGOLIS,
CHUCK ROCKWELL, LTD., DOUG LANDON,
LTD., OPTIMUM RESOURCES, INC.,
BATYA TOV HILSEN a/k/a BATYATOV
HILSEN,

                         Defendants.
----------------------------------------------------------------x

## MEMORANDUM DECISION APPROVING THIRD
## AMENDED AND RESTATED SETTLEMENT AGREEMENT

Appearances:

Avrum J. Rosen, Esq.                        David W. Dykhouse, Esq.
The Law Offices of Avrum J. Rosen, PLLC     Jesse A. Devine, Esq.
38 New Street                               Patterson Belknap Webb & Tyler LLP
Huntington, NY 11743                        1133 Avenue of the Americas
Attorneys for Richard E. O'Connell          New York, NY 10036
  as Chapter 7 Trustee                      Attorneys for Rita Hilsen


Steven H. Newman, Esq.                      Jacqueline M.H. Bukowski, Esq.
Katsky Korins LLP                           527 Cathedral Parkway
605 Third Avenue                            New York, NY 10035
 New York, NY 10158                         Attorneys for Rita Hilsen
Attorneys for the Margolis Defendants

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion under Bankruptcy Rule 9019 (the "Rule 9019 Motion") of

Richard E. O'Connell (the "Trustee"), the Chapter 7 trustee of the estate of Jesse Morton Hilsen

a/k/a Jess Hilsen Grunenbaum a/k/a Joseph Grunenbaum a/k/a Jess Grunen (the "Debtor") to

approve the Third Amended and Restated Settlement Agreement (the "Settlement Agreement")

among the Trustee, Joan Packles a/k/a Joan Margolis ("Dr. Margolis"), Chuck Rockwell, Ltd.,

and Doug Landon, Ltd. (collectively, the "Margolis Defendants").

The Trustee filed this adversary proceeding against the Margolis Defendants to recover

real and personal property that the Debtor allegedly transferred to the Margolis Defendants more

than fourteen years ago, at or near the time that the Debtor and Dr. Margolis were married or

living together.  Many of the issues present in this case have been the subject of other actions,

including matrimonial actions, federal criminal proceedings for nonpayment of court-ordered

child support, and another bankruptcy case of the Debtor that was pending for more than twenty

years, from 1987 to 2008.  After discovery, negotiations, and a court-ordered mediation, the

Trustee and the Margolis Defendants reached an agreement to settle the Trustee's claims.

Notice of this motion was provided to all creditors and the Office of United States

Trustee.  Docket No. 86 (Affidavit of Service).  One creditor, Rita Hilsen, the Debtor's first wife

and mother of his children, objects to the Settlement Agreement.  Rita Hilsen was married to the

Debtor from 1965 until 1988, and has been engaged in contentious litigation with the Debtor to

collect significant sums of unpaid alimony and child support for more than twenty years.

The Trustee, the Margolis Defendants, and Rita Hilsen attempted to resolve the

objections to the settlement through negotiation and court-ordered mediation, and this led to

several modifications of the Settlement Agreement.  But ultimately, the parties were not able to

resolve Rita Hilsen's cental remaining objection, which is that the Trustee's investigation was incomplete and the consideration to be paid by the Margolis Defendants is inadequate.[1]

The Court held an evidentiary hearing on February 27, 2008, at which the Trustee and Rita Hilsen appeared, in person and by counsel, and were heard, and the Court heard testimony from the Trustee. Further hearings were held and a proposed order approving the Settlement Agreement was submitted to the Court on December 16, 2008. Based on the entire record, and for the reasons stated on the record of the hearing and set forth below, the Trustee's Rule 9019 Motion to approve the Settlement Agreement with the Margolis Defendants is granted.

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(H). The following constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7052.

## Background

---

[1] *See* Docket No. 88 (Objection of Rita F. Hilsen to Application for an Order Pursuant to Bankruptcy Rules 9019 and 7065 and Sections 105(a) and 363 of the Bankruptcy Code Approving Settlement Agreement) ("Objection of Rita Hilsen to Original Settlement Agreement") ¶¶ 24-25; Docket No. 109 (Pre-Hearing Memorandum of Law and Identification of Witness of Rita F. Hilsen) at 9; Docket No. 122 (Objection of Rita F. Hilsen to Application for an Order Pursuant to Bankruptcy Rules 9019 and 7065 and Sections 105(a), 363 and 541 of the Bankruptcy Code Approving Amended and Restated Agreement Settling Adversary Proceeding) ("Objection of Rita Hilsen to Amended Settlement Agreement") at 5-6; Docket No. 131 (Objection of Rita Hilsen to Second Amended and Restated Agreement Settling Adversary Proceeding) ("Rita Hilsen Obj.") ¶¶ 8-15; Docket No. 135 (Second Supplemental Memorandum from Creditor Rita F. Hilsen Objecting to a Second Amended and Restated Agreement Settling an Adversary Proceeding) ("Rita Hilsen Second Supp. Obj.") at 5-9.

On October 13, 2005, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  Case No. 05-30850, Docket No. 1 (Petition).  At the time the Debtor commenced this bankruptcy case, he was not represented by counsel.  *Id.*  The Debtor later retained counsel to represent him.  Case No. 05-30850, Docket No. 47 (Notice of Appearance).

The Debtor filed Schedules A, B, and C with his bankruptcy petition, which list his scheduled real and personal property and his exemptions.  Case No. 05-30850,  Docket No. 1 (Schedule A (Official Form B6A), Schedule B (Official Form B6B), Schedule C (Official Form B6C)).  The Debtor's Schedule A lists a "life estate (left to the Debtor in Mother's Estate)" in "183 acres in Sullivan County NY plus 20 acres adjoining with house paid for by Nina Hilsen to Packles Trust."[2]  Case No. 05-30850, Docket No. 1 (Schedule A (Official Form B6A)).  Schedule A also lists a three-bedroom apartment in Killarney, Johannesburg, Portofino, South Africa.  *Id*.  The Debtor states on Schedule A that the apartment was owned in fee simple but was "turned over to the bank in October 2003 when [he] could not pay monthly mortgage."  *Id*.

The Debtor's Schedule B lists an interest in an "oral trust from Debtor's mother in care of [Dr. Margolis] to provide for food and shelter for Debtor in the future."  Case No. 05-30850, Docket No. 1 (Schedule B (Official Form B6B)).  Schedule B also lists the Debtor's interest in household goods and furnishings, and states that certain pieces of furniture are in the possession of Dr. Margolis.  *Id*.  Schedule B also lists an interest in certain art objects, antiques and other collectibles, including a number of  art objects and collectibles in the possession of Dr. Margolis.  *Id*.  The Debtor's Schedule B also lists an interest in certain jewelry including a Rolex watch and

---

[2]  The Trustee alleges that the "Packles Trust" referred to in the Debtor's Schedule A is known as the Chuck Rockwell Trust.  Complaint ¶ 50.

-3-

two Citroën automobiles.  *Id.*

The Debtor's original Schedule C does not list any rights in the Chuck Rockwell Trust as exempt property.  Case No. 05-30850, Docket No. 1 (Schedule C (Official Form B6C)).  On April 20, 2007, the Debtor amended his Schedule C to claim, as exempt personal property of unknown value, his "Benefits due as beneficiary under a certain Trust (the 'Chuck Rockwell Trust') made August 17, 1991."  Case No. 05-30850, Docket No. 55 (Amended Schedule C).  On May 11, 2007, the Trustee and the Margolis Defendants filed objections to the Debtor's exemptions relating to the Chuck Rockwell Trust.  Case No. 05-30850, Docket No. 67 (Trustee's Motion Objecting to Debtor's Claimed Exemption in Benefits Under a Certain Trust); Docket No. 69 (Margolis Defendants Objecting to Certain Exemptions Claimed by the Debtor.)  After a hearing on June 18, 2007, the Court ruled, among other things, that Debtor's future potential and conditional income benefits, if any, under the Chuck Rockwell Trust are property of the estate and exempt to the extent of ninety percent of any trust income, and that the Debtor's conditional personal right to use the property referred to in the Chuck Rockwell Trust is not property of the Debtor's estate.  Case No. 05-30850, Order Sustaining in Part and Overruling in Part Objections to Certain Exemptions Claimed by the Debtor dated March 17, 2009.

*The Adversary Proceeding*

On April 13, 2006, the Trustee commenced this action by filing a complaint (the "Complaint") against the Margolis Defendants, Optimum Resources, Inc., and Batya Tov Hilsen a/k/a Batyatov Hilsen[3] (the "Defendants"), to avoid and recover certain alleged transfers of

---

[3]  On October 5, 2006, this Court entered an Order Granting Motion for Default Judgment Against Defendant Batya Tov Hilsen a/k/a Batyatov Hilsen, the Debtor's sister.  That Order provided, among other things, that judgment by default be entered on the Trustee's ninth

property by the Debtor to the Defendants, and for injunctive relief, a declaratory judgment, and turnover of property of the bankruptcy estate.  Docket No. 1 (Complaint).  The Trustee alleges that the Debtor's bankruptcy petition and schedules list property of the estate that is in the Defendants' custody and control, and that the Debtor transferred these assets without consideration in order to place them beyond the reach of his creditors.  *Id.*  On June 5, 2006, and June 23, 2006, the Margolis Defendants filed an Answer and an Amended Answer denying the material allegations of the Complaint.  Docket No. 21 (Answer); Docket No. 25 (Amended Answer).

On May 4, 2006, the Trustee obtained, on consent, a temporary restraining order and preliminary injunction prohibiting the Margolis Defendants from transferring any of the property that is the subject of this action.  Docket No. 11 (Order Granting Motion for Preliminary Injunction).  That injunction has been extended by agreement of the parties.  Docket Entry dated April 27, 2006; Docket Nos. 20, 22, 31, 32, 42, 43, 52, 52, 87, 95, 95, 127; Docket Entry dated October 4, 2006.

*The Allegations of the Complaint*

The Trustee makes the following allegations in the Complaint.  On August 3, 1988, the Supreme Court of the State of New York, New York County, entered a final judgment of divorce between the Debtor and Rita Hilsen, his first wife.  Complaint ¶ 14.  For the years from 1988 to 1995, the Debtor owed approximately $200,000, in unpaid child support and was found in contempt of court for his failure to make these payments.  Complaint ¶ 16.  During the course of

---

claim for relief that Batya Tov Hilsen a/k/a Batyatov Hilsen has no interest in the artwork and furnishings listed by the Debtor on Schedule B.  Docket No. 41.

the divorce and child support enforcement proceedings, the case was referred to a hearing examiner.  Complaint ¶ 17.  The hearing examiner made findings of fact including:

    a.      [The Debtor] was a licensed psychiatrist and also worked as the manager of the rock band Kiss from approximately 1988 to 1994.

    b.      [I]n 1992 [the Debtor] was paid over $500,000.00 and . . . these payments were made by electronic transfer to a bank in Coconut Creek, Florida, to the account of "Optimum Resources," a corporation under the control of [the Debtor].

    c.      [I]n 1990, [the Debtor] received over $230,000 in "wire transfers" from the "Kiss Companies" and . . . [the Debtor] was paid large sums of cash in addition to these transfers.

    d.      [The Debtor] received between $230,000 to $500,000 per year plus additional undetermined amounts of cash while employed by Kiss.

Complaint ¶ 18.[4]

In 1986, while the Debtor was still married to Rita Hilsen, Dr. Margolis and the Debtor were married in the Dominican Republic and were divorced a few months later.  Complaint ¶¶ 38, 39.  In January 2005, Dr. Margolis testified at a deposition in the Debtor's divorce proceedings that the Debtor left with her art work that belonged to his mother, a Rolex watch, and an automobile that is kept with another automobile in upstate New York.  Complaint ¶¶ 40, 41, 45.  The Trustee alleges that Dr. Margolis is the constructive trustee of property of the Debtor's bankruptcy estate that must be turned over to him as Trustee, including jewelry, artwork, furniture, and collectibles.  Complaint ¶¶ 69, 70.

---

[4]  The Trustee alleges that Optimum Resources, Inc., was set up by the Debtor as a means fraudulently to transfer his earnings from the Kiss Companies beyond the reach of his creditors. Complaint ¶ 19.  In the Complaint, the Trustee seeks a declaratory judgment that the property held by Optimum Resources, Inc., should be deemed to be property of the Debtor's estate to be turned over to the Trustee.  Complaint ¶ 137.

On July 1, 1987, while his divorce action from Rita Hilsen was pending, the Debtor filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York (the "1987 Bankruptcy Case"). *In re Jesse M. Hilsen*, Case No. 87-11261 (Bankr. S.D.N.Y.), Docket No. 1. *See* Complaint ¶ 22. A final judgment of divorce was entered on August 3, 1988. Complaint ¶ 14. The Debtor's Chapter 11 case was converted to one under Chapter 7 in 1988, and the 1987 Bankruptcy Case concluded in 2008. *In re Jesse M. Hilsen*, Case No. 87-11261 (Bankr. S.D.N.Y.), Docket Entry dated September 8, 2008. The bankruptcy court in the 1987 Bankruptcy Case referred all issues related to the Debtor's divorce proceedings to the New York State Supreme Court. Complaint ¶¶ 23, 24. By order dated October 11, 1990, the bankruptcy court found that "the record demonstrates unequivocally that Jesse Hilsen was using the bankruptcy process to avoid state court actions and to defraud his wife of her share of the parties' marital property." Complaint ¶ 25.

The Debtor left the United States in 1994 and resided for a period of time in Johannesburg, South Africa. Complaint ¶¶ 27, 28. The Trustee alleges that the Debtor "fled the United States in an effort to avoid payment of his debts." Complaint ¶ 86.

On July 29, 2003, criminal proceedings against the Debtor were commenced under the Child Support Recovery Act of 1992, as amended by the Deadbeat Parents Punishment Act of 1998, in the United States District Court for the Southern District of New York. *United States v. Jesse Hilsen*, Case No. 03-00919 (S.D.N.Y.). The Debtor pleaded guilty to one count of failure to pay past-due court-ordered child support to Rita Hilsen and was sentenced to a term of time served and one year of supervised release. *United States v. Jesse Hilsen*, Case No. 03-00919 (S.D.N.Y.), Docket No. 43 (Judgment in a Criminal Case); United States v. Jesse Hilsen, 2005

WL 3434778, at *4-5 (S.D.N.Y. Dec. 14, 2005).  On June 24, 2004, the Debtor voluntarily

surrendered to federal authorities and by order dated December 12, 2005, the District Court

ordered the Debtor to make restitution to Rita Hilsen in the amount of $161,975.  *Id.*; *see*

Complaint ¶ 34.

        As noted above, the Debtor's Schedule A filed with his bankruptcy petition lists a "life

estate (left to the Debtor in Mother's Estate)" in "183 acres in Sullivan County NY plus 20 acres

adjoining with house paid for by Nina Hilsen to Packles Trust [also known as the Chuck

Rockwell Trust]."[5]  Case No. 05-30850, Docket No. 1 (Schedule A (Official Form B6A)).

Plaintiff's Exh. 23 (Trust Agreement).  The sole asset of the Chuck Rockwell Trust is ten shares

in Chuck Rockwell, Ltd., a real estate holding company which holds a rural lot in Sullivan

County, New York, known as Parcel No. 12-1-15.  Complaint ¶¶ 54-56.  Doug Landon, Ltd., is a

real estate holding company that holds an adjacent rural lot known as Parcel No. 12-1-5 (together

with Parcel No. 12-1-15, the "Sullivan County Property").  Complaint ¶¶ 57, 58.  The Trustee

alleges that the "life estate" scheduled by the Debtor in the Sullivan County Property is a product

of a fraudulent conveyance.  Complaint ¶¶ 49, 103-08, 110-16.

        The Trustee seeks to avoid and recover "the transfers to Chuck Rockwell, Ltd., Doug

Landon, Ltd., Optimum Resources, Ltd., Joan Packles a/k/a Joan Margolis, Nina Hilsen, and

Batyatov Hilsen."  Complaint ¶¶ 103, 115.  In particular, the Trustee seeks to avoid and recover

the alleged transfers by the Debtor of funds held by Optimum Resources (Complaint ¶ 19),

automobiles, artwork, jewelry, collectibles, and furniture held by Dr. Margolis (Complaint ¶¶ 40,

---

        [5]  The Chuck Rockwell Trust was established in 1991 by Frances Packles, Dr. Margolis'
mother, as grantor, Dr. Margolis and her son Marc Johnson as trustees, and Dr. Margolis and the
Debtor as beneficiaries.  Plaintiff's Exh. 23 (Trust Agreement).  *See* Complaint ¶¶ 42, 51, 53;

41, 67), property held by Chuck Rockwell, Ltd. and Doug Landon, Ltd. (Complaint ¶ 59), and

assets held by the Debtor's mother Nina Hilsen and sister Batya Tov Hilsen (Complaint ¶¶ 73,

80).

*The Settlement Approval Process*

On March 26, 2007, the Trustee and the Margolis Defendants filed their first agreement

to settle this action (the "Original Settlement Agreement").  Docket No. 85 (Motion to

Compromise Controversy Pursuant to Bankruptcy Rules 9019 and 7065 and Sections 105(a) and

363 of the Bankruptcy Code), Exh. A.  Rita Hilsen opposed the approval of the settlement on

grounds, among others, that the definition of the property being conveyed to the Margolis

Defendants was overly broad and not limited to the property interests of the Debtor's estate, that

the scope of the injunction was impermissibly broad and violated her rights, and that the

consideration being paid to the Trustee was inadequate.  Docket No. 88 (Objection of Rita

Hilsen to Original Settlement Agreement) at 6-16.  On August 21, 2007, the Court held a hearing

on the motion to approve the Original Settlement Agreement, including the objections asserted

by Rita Hilsen, and the hearing was adjourned to permit the parties to submit a revised

settlement agreement.  Docket Entry dated August 21, 2007.

On September 24, 2007, the Trustee and the Margolis Defendants filed a revised

agreement to settle this action (the "Amended and Restated Settlement Agreement").  Docket

No. 119 (Amended Motion Pursuant to Bankruptcy Rules 9019 and 7065 and Section 105(a),

363, and 541 of the Bankruptcy Code Approving Amended and Restated Agreement Settling

Adversary Proceeding), Exh. A.  Rita Hilsen again opposed the approval of the settlement for

many of the same reasons.  Docket No. 122 (Objection of Rita Hilsen to Amended Settlement

Agreement) at 3-7.  On October 3, 2007, the Court held a hearing on the motion to approve the Amended and Restated Settlement Agreement, including the objections asserted by Rita Hilsen, and the hearing was again adjourned to permit the parties to submit a revised settlement agreement.  Docket Entry dated October 3, 2007.

On December 7, 2007, the Trustee and the Margolis Defendants filed a motion to approve a new settlement agreement reflecting further revisions in response to issues that were raised at the October 3, 2007, hearing (the "Second Amended and Restated Settlement Agreement").  Docket No. 128 (Amended Motion Pursuant to Bankruptcy Rules 9019 and 7065 and Sections 105(a), 363, and 541 of the Bankruptcy Code Approving Second Amended and Restated Agreement Settling Adversary Proceeding).  Rita Hilsen again opposed the approval of the settlement to the extent that the injunction contained in the settlement agreement would enjoin her personal, independent claims, and because the proposed contingent payment to the Trustee of $50,000 (of the $125,000 total to be paid to the Trustee) was "deeply unfair" and "against the best interest of both [Rita] Hilsen and the estate."  Rita Hilsen Obj. ¶ 9.  *See* Rita Hilsen Obj. ¶¶ 5-15.  On January 8, 2008, the Court held a preliminary hearing on the motion to approve the Second Amended and Restated Settlement Agreement, including the objections asserted by Rita Hilsen, and scheduled an evidentiary hearing on the objections to the settlement for February 27, 2008.  Docket Entry dated January 8, 2008.

On February 27, 2008, the Court held an evidentiary hearing on the approval of the parties' settlement at which the Trustee and his counsel, counsel for the Margolis Defendants, and the objecting creditor Rita Hilsen and her counsel, appeared and were heard.  The Trustee testified in support of the settlement, and was cross-examined extensively by Rita Hilsen's

counsel.  The Margolis Defendants vigorously denied any liability, and stated that they were settling solely to avoid the costs, burdens, and uncertainties of litigation and to achieve a global resolution, to the extent possible, of all disputes related to the Trustee's claims.  *See, e.g.,* Tr.[6] 65:18-84:14, 120:4-121:12.

At the close of the hearing, as described below, based on the entire record, the Court approved the material terms of the settlement as set forth on the record, and directed the parties to submit a corrected settlement agreement incorporating the corrections and clarifications identified during the hearing and proposed order on thirty days' notice to Rita Hilsen.  Docket Entry dated February 27, 2008.  *See* Tr. 143:9-24.

The Trustee settled a proposed order approving the Third Amended and Restated Settlement Agreement for September 4, 2008.  Docket Nos. 137, 138 (Notice of Settlement of Proposed Order Approving Third Amended and Restated Settlement Agreement, Affidavit of Service).  Rita Hilsen objected to the entry of the proposed order on grounds that certain provisions of the proposed order differed materially from the terms of the settlement reflected on the record of the February 27, 2008, hearing.  Docket No. 143 (letter dated August 18, 2008, objecting to the proposed order approving the Third Amended and Restated Settlement Agreement).  A hearing was held on October 17, 2008, at which counsel for the parties appeared and were heard, and the Trustee was directed to submit a revised proposed order.  Docket Entry dated October 17, 2008.  Counsel for Rita Hilsen acknowledged that there had been an adequate opportunity to consider the terms of the settlement that was approved by the Court.  Docket No.

---

[6] References to "Tr." are to the transcript of the February 27, 2008, hearing.  *See* Docket No. 151.

161 (Transcript of October 17, 2008, hearing) at 62:4-16. On December 16, 2008, the Trustee

submitted a revised proposed order, consented to as to form by Rita Hilsen.[7]

*The Terms of the Parties' Settlement*

The Settlement Agreement provides for the Margolis Defendants to make two payments,

one that is certain and another that is contingent, in exchange for the bankruptcy estate's interest

in the "Transferred Property," which is the estate's interest in "[a]ll real and personal property

described in Exhibit C" (defined as the "Adjudicated Property"),[8] the Debtor's "Story Rights,"[9]

and the Chuck Rockwell Trust including "real or personal property held by the Chuck Rockwell

Trust."[10]  Settlement Agreement ¶ 7.

---

[7] On February 13, 2009, Rita Hilsen filed a letter with the Court stating that she objected to the entry of the proposed order on grounds that it was ambiguous as to her rights, and terminating the services of her *pro bono* counsel, Patterson Belknap Webb & Tyler LLP.  Docket No. 158 (February 13, 2009, letter from Rita Hilsen).

[8] The Adjudicated Property includes the Sullivan County Property, the oral trust, artwork, collectibles, furniture, jewelry, and automobiles listed on the Debtor's Schedule B, and the default judgment against Batya Tov Hilsen.  Settlement Agreement, Exh. C.

[9] The "Story Rights" include "[t]he name Jesse Morton Hilsen (and other names of the Debtor or other names used by the Debtor . . . any and all events, accounts, stories, copyrights, and any other intellectual property . . . of the Debtor as of the Filing Date, including . . . any accounts, stories or copyrights with respect to the Debtors activities with the rock band known as KISS, divorce proceedings and enforcement proceedings involving Rita Hilsen and Leona Grunenbaum, travels outside of the United States, and relationship or activities with Dr. Margolis and her family members . . . ."  Settlement Agreement ¶ 7(b). The Settlement Agreement provides that the Story Rights do not include rights owned by any person or entity other that the estate and the Debtor.  Settlement Agreement ¶ 8.

[10] The rights associated with the Chuck Rockwell Trust include any claims to any income of the Debtor through the Chuck Rockwell Trust," any rights of the Debtor "to use or live on the real property owned by [the] Chuck Rockwell [Trust]" or "to object or consent to the sale of the real property owned by the Chuck Rockwell [Trust]," subject to any rights of the Debtor under the Chuck Rockwell Trust which are determined to be exempt.  Settlement Agreement ¶ 7(c).

The Settlement Agreement also provides that the Trustee and the Margolis Defendants release each other from any "Claims,"[11] and that the bankruptcy estate's rights in the Transferred Property shall be transferred free and clear of any claims in the estate's rights by any person or entity, including the Trustee, the bankruptcy estate, the Debtor, the other defendants, and all creditors of the Debtor and the estate, including Rita Hilsen and each of her professionals and agents. Settlement Agreement ¶ 11. And it provides that those persons and entities shall be enjoined from commencing or continuing any action or proceeding against the Margolis Defendants to pursue any of the bankruptcy estate's rights in the Transferred Property. *Id.*

Significantly, only *the rights of the bankruptcy estate* are included in the Transferred Property, so that any person or entity, including Rita Hilsen, may continue to pursue his, her, or its independent claims against the Margolis Defendants. In addition, only the pursuit of claims of other persons or entities, including Rita Hilsen, in *the rights of the bankruptcy estate* is

---

[11]  The term "Claims" means:

[A]ny and all claims, demands, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, recoupments, contracts, obligations, liabilities, controversies, costs, expenses, interest, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, attorneys' fees and losses whatsoever, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, direct or derivative, accrued or not accrued based upon any matters whatsoever occurring or arising prior to the date of this Agreement which any of them ever had, now has or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date hereof, except for the [the parties'] obligations under th[e] Agreement."

Settlement Agreement ¶ 5(a), (b).

enjoined.  Viewed another way, any person or entity, including Rita Hilsen, retains the ability to

pursue his, her, or its independent claims for property other than the bankruptcy estate's rights in

the Transferred Property, against the Margolis Defendants.  And of course, Rita Hilsen's rights

to pursue her claims against the Debtor for unpaid child support, alimony, and her own story

rights remain unaffected.

In return, as noted above, the Margolis Defendants agree to make two payments, one that

is certain and another that is contingent.  First, the Margolis Defendants agree to pay the Trustee

$75,000, within three days after the effective date of the Settlement Agreement.  Settlement

Agreement ¶ 2.  And second, the Margolis Defendants agree to pay the Trustee an additional

$50,000, five years after the effective date of the Settlement Agreement, provided that during

those five years, neither Rita Hilsen nor any entity owned or controlled by her, her children,

professionals, agents, heirs, successors, or assigns has commenced a legal proceeding, motion or

action against any of the Margolis Releasees[12] relating to the Debtor, the bankruptcy estate, the

released claims, the Adjudicated Property, or the Story Rights, or filed any motions or legal

proceedings seeking clarification or interpretation of the order approving the settlement, or

served a subpoena upon any of the Margolis Releasees.  Settlement Agreement ¶ 12.  That is, in

general terms, the Settlement Agreement provides a minimum recovery to the bankruptcy estate

of $75,000, and a potential recovery to the estate of $125,000, provided that no action or

---

[12]  The Margolis Releasees include "Dr. Margolis, Chuck Rockwell, Doug Landon, the
Chuck Rockwell Trust, all beneficiaries of the Chuck Rockwell Trust (excluding Jesse Morton
Hilsen), Frances Packles, Marc Packles, Aaron Packles, Michelle Packles, and Dr. Richard
Margolis, and each of their respective members, trustees, shareholders, directors, officers,
attorneys, spouses, children, heirs, estates, administrators, successors and assigns . . . ."
Settlement Agreement ¶ 5(a).

proceeding is commenced by or on behalf of Rita Hilsen against the Margolis Releasees. The

parties agree that after the costs of administration are paid, all of the recovery by the bankruptcy

estate will be distributed to Rita Hilsen as a priority creditor. Tr. 61:23-62:16. *See* n.13 *infra*.

*The Objecting Creditor*

Rita Hilsen, the sole objecting creditor, has spent approximately twenty years seeking to

enforce judgments arising from her 1988 divorce from the Debtor "and the significant support,

alimony and equitable distribution obligations that the Debtor has shirked since then." Objection

of Rita Hilsen to the Original Settlement Agreement at 2. It is clear from the record that her

efforts to collect these amounts have been extraordinarily difficult and frustrating.

Rita Hilsen notes that in an "Order of Disposition dated July 14, 2006 . . . which was

entered in a support proceeding pending in the Family Court . . . spousal and child support

arrears were fixed in the amounts of $777,071.06 and $28,302.53," and that this represents just

one portion of the amounts owed to her by the Debtor. Objection of Rita Hilsen to the Original

Settlement Agreement at 2 n.2. She asserts that as a priority creditor, she is likely to be the only

creditor entitled to a distribution from the Debtor's estate.[13] Objection of Rita Hilsen to the

Original Settlement Agreement at 3.

Throughout the settlement process, Rita Hilsen has asserted that her direct rights, as

opposed to the rights of the Trustee and the bankruptcy estate, should not be enjoined or

---

[13] The Debtor's bankruptcy case was commenced prior to the effective date of the
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section
507(a)(7) of the pre-BAPCPA Bankruptcy Code provides for seventh priority status to "allowed
claims for debts to a spouse, former spouse . . . for alimony to, maintenance for, or support of
such spouse . . . in connection with a . . . divorce decree or other order of a court of record, . . . ."
11 U.S.C. § 507(a)(7).

compromised by a settlement. She also asserts that the Transferred Property that is the subject of the settlement has a far greater value than that reflected by the amounts to be paid under the Settlement Agreement. It is evident that a significant portion of her claim against the Debtor will remain unpaid, and it will not be discharged in this bankruptcy case. Nor will her ability to seek to collect it directly from the Debtor be diminished by the Settlement Agreement. And indeed, Rita Hilsen is not prejudiced by the Settlement Agreement to the extent that she seeks to pursue any rights she may have against the Margolis Defendants. Rather, if she does so, she simply forfeits a minimum recovery of $50,000, in the form of the contingent payment that she would receive as a priority creditor. Settlement Agreement ¶ 12. Viewed another way, the Settlement Agreement assures her of a minimum recovery, without any litigation burden, risk, or expense, from the Margolis Defendants, without otherwise affecting her rights.

## Discussion

### *The Legal Standard*

The bankruptcy court's authority to approve a settlement agreement is set forth in Rule 9019 of the Federal Rules of Bankruptcy Procedure.[14] Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). "'[C]ompromises are favored in bankruptcy' because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate." *Investment Exchange Group, LLC v. Colorado Capital*

---

[14] The Second Circuit notes that "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose . . . to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461-62 (2d Cir. 2007) (quoting *In re Masters, Inc.*, 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992)).

*Bank (In re The 1031 Tax Group, LLC)*, 2007 WL 2455176, at *3 (Bankr. S.D.N.Y. 2007)

(quoting *Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996)).

In considering whether to approve a proposed settlement, "[i]t is not necessary for the

court to conduct a 'mini-trial' of the facts or the merits underlying the dispute." *In re Adelphia*

*Comm. Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). Rather, the court must make an

informed and independent judgment as to whether a proposed compromise is "fair and equitable"

after apprising itself of "all facts necessary for an intelligent and objective opinion of the

probabilities of ultimate success should the claim be litigated." *Protective Comm. for Indep.*

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

It is not the court's task to determine whether the settlement proposed by the parties is the

best possible, or fairest, or most appropriate resolution of the dispute. Such an assessment would

be tantamount to the court becoming a principal, rather than a neutral, in the parties'

negotiations. Rather, the court must do neither more nor less than "canvass the issues and see

whether the settlement 'falls below the lowest point in the range of reasonableness'" from the

perspective of the bankruptcy estate. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599,

608 (2d Cir. 1983), *cert. denied,* 464 U.S. 822 (1983) (quoting *Newman v. Stein*, 464 F.2d 689,

693 (2d Cir. 1972), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972)).

The trustee's business judgment plays a role in the settlement of a claim that is property

of the Chapter 7 bankruptcy estate. *In re Indian Motorcycle, Inc*., 289 B.R. 269, 283 (B.A.P. 1st

Cir. 2003) ("Compromises are generally approved if they meet the business judgment of the

trustee.") Factors considered by the trustee in exercising his or her business judgment may

include, among others, the risks, costs, and possible rewards of litigation, the issues associated

-17-

with collection in the event of a favorable outcome, the prospect of a significant delay in the administration of the case, the professional fees and costs likely to be required, and the extent of the claims filed by creditors.  In independently evaluating the reasonableness of the settlement, the court may give weight to the trustee's opinion that the settlement is fair and equitable, but may not "simply defer to the trustee's judgment."  *Doyaga v. Roth (In re Handler)*, 386 B.R. 411, 421 (Bankr. E.D.N.Y. 2007) (approving settlement in fraudulent transfer case over creditor's objection).

The views of creditors also play a role in the court's assessment of a proposed settlement. When a significant portion of the creditors oppose a proposed settlement, "a bankruptcy court may not ignore creditors' overwhelming opposition to [the] settlement."  *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mortgage Fin. Corp.*), 68 F.3d 914, 918 (5th Cir. 1995).  Nor, of course, may a court ignore the opposition of a significant priority creditor. Rather, the court must carefully consider the wishes of the majority of creditors and afford proper deference to their reasonable views.  *In re Foster Mortgage Fin. Corp.*, 68 F.3d at 917 (citing *In re Transcontinental Energy Corp.*, 764 F.2d 1296 (9th Cir. 1985)).  As one court has observed:  "'[p]roper deference to [the creditor's] reasonable views' is not the same as saying that the court must defer to the creditor simply because the only creditor (or a majority of creditors) does not think the settlement is fair."  *In re Vazquez,* 325 B.R. 30, 37 (Bankr. S.D. Fla. 2005) (quoting *In re Foster Mortgage Fin. Corp.*, 68 F.3d at 918).

In the end, as many courts in this circuit and elsewhere have concluded, the positions asserted by creditors are not dispositive, and a creditor's objection may be overruled when approval of the settlement is warranted.  As Chief Judge Craig of this Court recently observed:

> It is true that, in determining whether to approve a settlement, "[t]he bankruptcy court should also consider the paramount interest of the creditors and give proper deference to their reasonable views. . . .  This does not mean, however, that a creditor – even a creditor holding the overwhelming majority of claims in the case – may arbitrarily veto a settlement that otherwise satisfies the criteria for approval.

*Plaza Equities LLC v. Paucker (In re Copperfield Inv., LLC),* 2009 WL 483144 at *7 (Bankr. E.D.N.Y. 2009) (quoting *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997)).  *See also Vaughn v. Drexel Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*), 134 B.R. 499, 505-07 (Bankr. S.D.N.Y. 1991) (where committee of creditors objected, court approved settlement finding that "although [the court] may consider a creditor's objection to the proposed compromise, the objection is not controlling and will not bar approval");  *In re Vazquez*, 325 B.R. at 36-37 (approving settlement over objection by the sole creditor, where probability of success in litigation was low to moderate with a significant risk of an adverse outcome and where any further litigation would be burdensome, costly, and complex); *In re Southeast Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004) ("The circuit courts have consistently held that creditor views are but *one* of the factors to consider approving a settlement, and are not controlling."  (emphasis in original)); *In re Bell & Beckwith*, 93 B.R. 569, 579 (Bankr. N.D. Ohio 1988) (approving settlement over objection of creditor holding ninety percent of debt, where an unfavorable outcome would cause the "complete unraveling" of the estate).

The Second Circuit has reviewed the factors that a court should consider in deciding whether to approve a proposed settlement.  Those factors are:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or

affirmatively support the proposed settlement"; (4) whether the parties in interest support the proposed settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478

F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr.

S.D.N.Y. 2006)).  This Court will consider the relevant factors in turn.

<u>Likelihood of success in litigation balanced against the benefits of the settlement</u>

Perhaps the most important factor to be considered in assessing a proposed settlement is the

balance between the benefits of a successful outcome in the litigation discounted to reflect the

likelihood of that outcome, and the benefits of the proposed settlement.  *See In re Iridium*

*Operating LLC*, 478 F.3d at 462.  It is fair to say that this balance often tips in favor of

settlement.  The outcome of litigation is nearly always uncertain and may be distant.  It is also

costly.  And the enforcement of any resulting judgment may be far from sure.  A settlement, by

contrast, eliminates uncertainty and delay, reduces costs, and brings finality to the parties'

dispute.  Even where, as here, a portion of the settlement consideration is contingent, a baseline

recovery may be established, and the risks and uncertainty associated with litigation are reduced

or eliminated.

Rita Hilsen argues that the proponents of the settlement have not established the value of

the Sullivan County Property and personal property covered by the Settlement Agreement, and

that the Trustee should have obtained more information about Chuck Rockwell, Ltd., Doug

Landon, Ltd., and the Sullivan County Property transactions in order to make an appropriate

determination as to whether the action should be litigated or compromised.  Rita Hilsen Obj. ¶

13; Tr. 131:6-22.

The Trustee acknowledged that he did not obtain an appraisal of the Sullivan County

Property, and could not state the exact value of the property that is the subject of the Settlement

Agreement.  Tr. 47:6-8, 76:4-21.  As to the personal property, the Trustee obtained appraisals of

the automobiles, but not of the other items.  Tr. 83:8-19; Plaintiff's Exh. 27 (Fax transmission

cover sheet to David Maltz requesting appraisal of two Citroen automobiles, certificates of title

for two Citroen automobiles, storage receipts).  The Trustee noted that the bankruptcy estate did

not have funds to pay for an appraisal of the Sullivan County Property.  Tr. 47:6-11.  And the

Trustee observed that, in his business judgment, it would not be cost-effective to obtain an

appraisal of the Sullivan County Property, in light of the many evidentiary and legal issues

surrounding his claim to recover that property.  Tr. 48:9-19.  Finally, the Trustee noted that

based on the valuation of the property in the 1987 Bankruptcy Case, the value of the personal

property could be at most the present value of $75,000, in 1987.  Tr. 80:21-82:20.

As to the settlement's future benefits, the Trustee explained that the prospect of a

recovery of $125,000 was an excellent result "given the ultimate potential recoveries, the costs

of getting there[,] the chance of what the ultimate recovery might be," and the time it would take

to try the case. Tr. 117:9-11; *see* Tr. 117:6-16.

Rita Hilsen also argues that the $50,000, contingent payment component of the

settlement is coercive, unfair, and against public policy, because it is intended to coerce her into

giving up rights that the Settlement Agreement could not explicitly take away.  Rita Hilsen Obj.

¶¶ 7-9; Tr. 122:5-16.  She asserts that the contingent payment is arbitrary because forty percent

of the settlement consideration is contingent on she and her agents not bringing suit against the

Margolis Defendants for five years, an event that is beyond the control of the Court, the Trustee, and the Margolis Defendants.  Rita Hilsen Obj. ¶ 10; Tr. 123:1-125:7.  And Rita Hilsen notes that the Settlement Agreement does not provide security for the $50,000, payment in five years.  Rita Hilsen Obj. ¶ 11; Tr. 125:8-126:7.

The Trustee states that the contingent payment serves the purpose of assuring a minimum recovery for Rita Hilsen as a priority creditor, leaving her the option to pursue her claims without restriction if she believes that they have a value greater than $50,000.  Tr. 119:1-15.  The Margolis Defendants state that they are prepared to settle for a total sum of $125,000, only if they are assured that litigation with Rita Hilsen is brought to a close.  Tr. 120:16-121:12.

Here, the record shows that the Trustee would have to overcome many substantial factual and legal hurdles in order to prevail at trial against the Margolis Defendants.  First, the Debtor did not acknowledge or recall that any of the transfers at issue took place.  Tr. 20:16-25:6; Docket No. 92 (Reply of Margolis Defendants to Objection of Rita Hilsen) at 4-5; Plaintiff's Exh. 24 (Transcripts of Deposition of Jesse Hilsen dated January 8, and 9, 2007).  Rather, the Debtor stated that even though he listed some of the property at issue in his schedules, he did not make or did not recall the transfers.  *See* Tr. 20:16-25:6, 118:16-25.  Plaintiff's Exh. 24 (Transcripts of Deposition of Jesse Hilsen dated January 8, and 9, 2007).  The Debtor also denied that he had any involvement with the purchase of the Sullivan County Property or the transfer of any money or property for his benefit to Dr. Margolis or the Chuck Rockwell Trust.  *See* Tr. 21:4-25:6.  Plaintiff's Exh. 24 (Transcripts of Deposition of Jesse Hilsen dated January 8, and 9, 2007).  The Trustee noted that it was in the Debtor's interest to support the Trustee's claims, because his debts to Rita Hilsen will not be discharged in his bankruptcy case and would

-22-

be reduced by any property recovered by the Trustee.  Tr. 21:21-23:16.  In the absence of

cooperation from the Debtor, and indeed, with the Debtor denying material aspects of the claims,

the Trustee faces significant evidentiary issues in connection with establishing the elements of

his claims against the Margolis Defendants.

Second, the documentary evidence available to the Trustee is incomplete in many ways.

Because many of the transactions concerning the Sullivan County Property took place in the

early 1990s, the Trustee was able to obtain only very limited records documenting the

transactions.  Tr. 33:1-34:8.  For example, the Trustee could not obtain documents from certain

banks and the Internal Revenue Service that might have been helpful to his case.  Tr. 33:20-34:8.

And many of the documents that the Trustee did obtain were not helpful.  Tr. 34:15-36:9, 28:20-

33:19.  *See, e.g.*, Plaintiff's Exh. 4 (Deed dated July 28, 1994, from The Old Salts Association,

Inc., to Doug Landon, Ltd.); Plaintiff's Exh. 9 (Certificate of Title); Plaintiff's Exh. 11

(handwritten statement dated July 25, 1991, of Nancy and Robert Lounsbury); Plaintiff's Exh. 30

(passbook accounts and checks written by Joan Packles).  Without access to the documents

associated with the transfer of the Sullivan County Property, the Trustee faces further obstacles

in establishing his claims that these transfers made some fifteen years ago should be undone.

Third, in order to prevail, the Trustee would have to overcome substantial issues relating

to the statute of limitations.  Tr. 34:13-37:22, 40:7-43:20.  The Trustee acknowledged in his

testimony that the Margolis Defendants have a credible argument that the statute of limitations

had run, and that in order to overcome the argument that these claims are time-barred, he would

have to rely on a novel argument to the effect that the running of the statute of limitations was

tolled during the years that the Debtor was out of the country.  Tr. 36:10-21.

Also, the Trustee noted that the record suggests that Rita Hilsen or her agents were aware of the transfers as early as September 2003, so that the two-year statute of limitations period would have begun to run, at the latest, in September 2003, more than two years before the bankruptcy case was commenced in October 2005.[15]  Tr. 41:8-43:20.  *See also* N.Y. CIV. PRAC. LAW AND RULES § 213(8) ("[T]he time within which [an] action [based upon fraud] must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it").  For all of these reasons, the Trustee concluded that his argument for tolling the statute of limitations entails a substantial litigation risk.  Tr. 36:16-21, 41:24-43:20.

Fourth, there is considerable uncertainty as to the ultimate value of the bankruptcy estate's interest in the Sullivan County Property.  *See* Tr. 28:20-32:12, 43:21-49:10; Docket No. 103 (Plaintiff's Pre-Hearing Memorandum in Support of Motion for Order (I) Approving Settlement Agreement; (II) Determining Ownership of Property; (III) Enjoining Third Parties; and (IV) Granting Related Relief) ("Plaintiff's Pre-Hearing Mem.") at 10-12.  The Trustee identified certain title problems that diminish the value of the estate's interest in the Sullivan County Property.  Tr. 28:20-32:12.

For example, the certificate of title held by Chuck Rockwell, Ltd., has coverage exceptions arising from a not-for-profit corporation's transfer of the Sullivan County Property without proper corporate authority, and without complying with applicable state law.  Plaintiff's

---

[15]  Rita Hilsen argues that the doctrine of equitable tolling should apply.  *See* Rita Hilsen Second Supp. Obj. at 11-12.  That doctrine tolls the statute of limitation for a claim during the period when a party is not aware of a wrong without fault or want of diligence.  *Id.*

Exh. 3 (Transcript of Deposition of Eric Groper, Esq. dated January 31, 2007); Plaintiff's Exh. 9

(Certificate of Title); Tr. 28:20-29:16.  An addendum to the purchase contract indicates that there

were title problems to be addressed by the lawyers for the parties to the agreement.  Plaintiff's

Exh. 11 (handwritten statement dated July 25, 1991, of Nancy and Robert Lounsbury).  Tr.

29:17-25.  And the files include a copy of a complaint arising out of the title concerns.

Plaintiff's Exh. 22 (complaint dated July 1, 1993, in *Apostolic Orthodox Church of Judah, Inc. v.*

*Warner*, N.Y. Sup. Ct. Sullivan County)

The Trustee also observed that Dr. Margolis may have a claim for property taxes paid

since the acquisition of the Sullivan County Property which would be offset against the

bankruptcy estate's recovery.  Tr. 45:22-46:8.  And the tax consequences to the bankruptcy

estate from a sale of the Sullivan County Property could also be substantial.  Tr. 46:9-47:5.

Finally, the Trustee noted that his remedy could be limited to the recovery of the funds that were

transferred, as opposed to the Sullivan County Property itself, which was acquired with those

funds.  Tr. 43:21-45:8.  The transferred funds could be at most $160,000, corresponding to the

purchase price of the Sullivan County Property.  Tr. 48:9:48-19.

Based on the entire record, the Court concludes that the balance between the benefits of a

successful outcome in this action discounted to reflect the likelihood of that outcome, and the

benefits of the proposed settlement, weighs in favor of approval of the Settlement Agreement,

for several reasons.  In order to recover, the Trustee must overcome several substantial legal and

evidentiary hurdles, any of which, standing alone, could be a complete bar to recovery.  In

addition, if he prevails, the Trustee's recovery may be limited, and may also be reduced by

offsets and liabilities relating to taxes and other expenses.

None of this is changed by the questions raised by Rita Hilsen about the adequacy of the Trustee's inquiry into the value of the property at issue, and indeed, the record shows that the Trustee undertook an appropriate exercise of his business judgment in assessing the potential value of these claims. Nor is it changed by the contingent nature of a portion of the settlement payment. And notably, if the Margolis Defendants default on the $50,000, payment in five years, then they will not receive a release from the Trustee. *See* Settlement Agreement ¶ 5(a).

The likelihood of complex and protracted litigation  Another important factor in assessing a proposed settlement is the expense, burden, and delay of complex and protracted litigation. *See In re Iridium Operating LLC*, 478 F.3d at 462. While this is always a factor in considering the merits of a settlement, it is of particular consequence in the bankruptcy context, where the prompt administration of a bankruptcy estate, for the benefit of the debtor and creditors alike, is among a trustee's central objectives.

Here, the record shows that the preparation of this case for trial, and the trial of the matter, would be time-consuming and complex for all of the parties. As described above, the Trustee faces challenging factual issues with respect to the elements of his claims, including proving the circumstances of transactions that allegedly took place some fifteen years ago. *See* pp. 22-24, *supra*. As the Trustee states, "[i]f this adversary [proceeding] was to go to trial, there would have to at least four (4) more depositions of parties, another deposition by the Trustee of the Debtor, and approximately seven (7) more third-party depositions." Plaintiff's Pre-Hearing Mem. at 8. He also faces difficult legal issues that may give rise to dispositive motions, including the prospect of a statute of limitations defense. *See* pp. 22-23, *supra*.

In addition, the Margolis Defendants have demanded a jury trial, which is likely to

necessitate additional delay and expense.  Tr. 117:6-25.  The Trustee estimates that legal fees through the completion of trial would be at least $150,000, or approximately double the amount that has already accrued since the beginning of the case.  Tr. 49:12-22.  Those fees would have administrative priority status, and would diminish the recovery of creditors, including Rita Hilsen.  *See* 11 U.S.C. §§ 503(b)(1), 507(a)(2).

Based on the entire record, the Court concludes that the likelihood of complex and protracted litigation is significant, and this factor too weighs in favor of approval of the Settlement Agreement.

<u>The paramount interests of the creditors</u>  Another factor to be considered is the "paramount interests of the creditors," including both the benefits to be received by the creditors and the creditors' position with respect to the proposed settlement.  *See In re Iridium Operating LLC*, 478 F.3d at 462.  The first of these calls for the Court to assess the objective benefits that the creditors may receive, while the second directs the Court to consider the views expressed by the creditors with respect to settlement.

As described above, the Settlement Agreement provides for two payments to be made, an immediate payment of $75,000, that is certain, and a deferred payment of $50,000, that is contingent.  *See* pp. 12-15, *supra*.  The record reflects that the initial payment will go to the administrative expenses of the bankruptcy estate, including professional fees that have been capped in order to assure the prospect of a recovery to Rita Hilsen.  Tr. 60:10-60:19.  All or substantially all of the second payment will be paid to Rita Hilsen, as a priority creditor.  Tr. 59:16-60:9.  *See* pp. 14-15 and n.13, *supra*.

And as discussed above, the Court concludes that the benefits of the proposed settlement

are substantial, particularly when measured against the benefits of a successful outcome in the litigation discounted to reflect the likelihood of success. *See* pp. 20-27, *supra*. The Court also notes that the contingent payment assures Rita Hilsen of a minimum recovery, without any litigation burden, risk, or expense, from the Margolis Defendants. *See* pp. 14-15, *supra*. For these reasons, the Court concludes that the objective benefits to be received by creditors weigh in favor of approval of the Settlement Agreement.

At the same time, Rita Hilsen, the Debtor's largest creditor and a priority creditor, objects to the approval of the Settlement Agreement. Many of her objections have been addressed by the parties to the settlement. She has asserted that her direct rights should not be enjoined or compromised by a settlement between the Trustee and the Margolis Defendants. Only *the rights of the bankruptcy estate* are compromised, and only the pursuit of claims in *the rights of the bankruptcy estate* is enjoined. That is, Rita Hilsen, or any other creditor, may continue to pursue independent claims against the Margolis Defendants.

But other objections asserted by Rita Hilsen remain unaddressed by the terms of the Settlement Agreement. Rita Hilsen objects that the Settlement Agreement is not for a greater sum, and that a portion of the settlement consideration is contingent. She also objects that the contingent payment is coercive, unfair, and against public policy.

As noted above, many courts have considered whether to approve a proposed settlement over the objection of many or even all of the creditors. *See pp.* 18-19, *supra*. A court must carefully consider the reasonable views of creditors, but it may also exercise its discretion to approve a settlement over the objection of some creditors, a majority of creditors, or even the sole creditor, if after weighing all the factors, the settlement falls above the lowest point in the

range of reasonableness. *See, e.g., In re Copperfield Inv. LLC,* 2009 WL 483144 at * 7*; In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. at 505-07*; In re Vazquez*, 325 B.R. at 37; *In re Lee Way Holding Co.*, 120 B.R. at 904; *In re Bell & Beckwith*, 93 B.R. at 579; *In re Southeast Banking Corp.*, 314 B.R. at 273; *In re Foster Mortgage Fin. Corp.*, 68 F.3d at 919.

Where creditors have argued successfully that a proposed settlement should be rejected, they have often also proposed to assume the litigation costs or even to proceed with the claim on their own. For example, in *Reiss v. Hagmann*, 881 F.2d 890 (10th Cir. 1989), the court reversed the bankruptcy court's approval of a settlement, because the sole creditor offered to pay the legal expenses to pursue the claim. *Reiss*, 881 F.2d at 892. And in *In re Qmect, Inc.*, 359 B.R. 270, 273 (Bankr. N.D. Cal. 2007), the bankruptcy court did not approve a proposed settlement where the settlement was unanimously opposed by the creditors and the counsel was willing to pursue the litigation on a contingent fee basis. *In re Qmect, Inc.*, 359 B.R. at 273. *See also In re Marshall*, 33 B.R. 42, 45 (Bankr. D. Conn. 1983) (disapproving settlement where creditor with ninety percent interest in the result of the litigation raised reasonable objections and was willing to assume the costs of litigation); *In re Wells*, 26 B.R. 150, 152 (Bankr. D. R.I. 1983) (disapproving settlement where objecting creditor with eighty percent interest was willing to advance the costs of litigation).

Here, the benefits of the proposed settlement, including the payment of administrative expenses and the prospect of an assured recovery for Rita Hilsen from the Margolis Defendants, suggest that the paramount interests of creditors weigh in favor of approval of the proposed settlement. At the same time, Rita Hilsen, a priority creditor, objects to the settlement, and this suggests the opposite. But Rita Hilsen did not propose to pay or advance the costs of litigating

the Trustee's claims.  Nor did she or her counsel offer to pursue the action on a contingency basis.

Based on the entire record, the Court concludes that the paramount interests of the creditors, including the benefits to be received by the creditors and the creditors' position with respect to the proposed settlement, weigh in favor of approval of the Settlement Agreement.[16]

The competency and experience of counsel supporting the settlement and the extent to which the settlement is the product of arm's length bargaining  Two additional factors cited by the *Iridium* court bear on whether the proposed settlement should be approved.  The first is the competency and experience of counsel, including the Trustee, supporting the Settlement Agreement.  *See In re Iridium Operating LLC*, 478 F.3d at 462.  The record reflects that the Trustee has more than twenty-four years of experience in administering Chapter 7 cases, and has entered into many settlements over that time.  Tr. 66:10-67:12.  That is, he is highly competent and experienced in the administration of bankruptcy estates and in the exercise of business judgment in determining whether to enter into a settlement.  Counsel for the Trustee and for the Margolis Defendants similarly have many years of experience in complex litigation, including in bankruptcy litigation and the representation of bankruptcy trustees.  For these reasons, and based on the entire record, the Court concludes that the competency and experience of counsel supporting the settlement weighs in favor of approval.

The second is the extent to which the settlement is the product of arm's-length bargaining.  *See In re Iridium Operating LLC*, 478 F.3d at 462.  The Trustee testified that the

---

[16]  An additional factor cited by the Second Circuit, whether the parties in interest support the proposed settlement, is to the same effect, for substantially the same reasons.  *See In re Iridium Operating LLC*, 478 F.3d at 462.

Settlement Agreement was the subject of a hard fought, good faith negotiation conducted at arm's length.  Tr. 65:18-65:23.  This was also reflected throughout the course of many court hearings during an extended period of contested litigation in which the Trustee and the Margolis Defendants asserted and defended their positions zealously.  For these reasons, and based on the entire record, the Court concludes that the extent to which the settlement is the product of arm's-length bargaining weighs in favor of approval.[17]

### Conclusion

Based on the entire record, and for the reasons set forth on the record and stated herein, the Trustee's motion to approve the Third Amended and Restated Settlement Agreement is granted.  An order in conformity with this Memorandum Decision will be entered simultaneously herewith.

Dated: Brooklyn, NY
      March _17_, 2009

                                  *s/Elizabeth S. Stong*              
                                  ELIZABETH S. STONG
                                  UNITED STATES BANKRUPTCY JUDGE

---

[17]  The remaining factor cited by the Second Circuit in *In re Iridium*, the nature and breadth of releases to be obtained by officers and directors, does not apply to the proposed settlement.  *See In re Iridium Operating LLC*, 478 F.3d at 462.